Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 N 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 328-0262
*srandall@randallslaw.com*

Jonah A. Flynn (*pro hac vice* pending)
**FLYNN LAW FIRM, LLC**
4200 Northside Parkway NW
Building One, Suite 200
Atlanta, GA 30327
Telephone:  404-835-9660
Fax:  404-835-6005
*jflynn@flynnfirm.com*

John P. Kristensen (*pro hac vice* pending)
**KRISTENSEN WEISBERG, LLP**
12540 Beatrice St., Suite 200
Los Angeles, California 90066
Telephone:  310-507-7924
Fax:  310-507-7906
*john@kristensenlaw.com*

**LEAD ATTORNEYS IN CHARGE FOR
PLAINTIFF AND CLASS MEMBERS**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Fantasia Williams, on Behalf of Herself and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> Whitefeather Holdings, LLC; Whitefeather Ventures, LLC and Corey Owens, Individually, <br><br> Defendants. | No. <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **(Jury Trial Demanded)** |

Plaintiff Fantasia Williams, on behalf of herself and on behalf of all other similarly situated, alleges as follows:

## I.   **INTRODUCTION**

1.      Whitefeather Holdings, LLC; Whitefeather Ventures, LLC ("Venom") and Corey Owens (hereinafter collectively referred to as "Defendants") required and/or permitted Fantasia Williams (hereinafter "Plaintiff") to work as an exotic dancer at their adult entertainment club "Venom" in Tucson, Arizona (herein "Venom" or "Venom's Gentlemen's Club"), in excess of forty (40) hours per week, but refused to compensate her at the applicable minimum wage and overtime rates.  In fact, Defendants refused to compensate Plaintiff whatsoever for any hours worked.  Plaintiff's only compensation was in the form of tips from club patrons.  Moreover, Plaintiff was required to divide her tips with Defendants and other employees who do not customarily receive tips.  Therefore, Defendants have failed to compensate Plaintiff at the federally mandated minimum wage rate.

2.      Defendants' conduct violates the Fair Labor Standards Act (FLSA), which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay.  *See* 29 U.S.C. § 207(a).

3.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision.  *See* 29 U.S.C. § 206.

4.      Plaintiff brings a collective action to recover the unpaid overtime compensation and minimum wage owed to her individually and on behalf of all other similarly situated employees, current and former, of Defendants in Arizona.  Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

5.      Additionally, Defendants' failure to compensate Plaintiff and all other non-exempt employees at a rate equal to or in excess of Arizona's required minimum wage violates the Arizona Wage Act, A.R.S. § 23-350, et. seq.  Plaintiff, therefore, brings a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure to recover unpaid wages

1  and other damages owed under Arizona wage laws.  Members of the Rule 23 Class Action

2  are hereinafter referred to as the "Arizona Class Members."

3  **II.    SUBJECT MATTER JURISDICTION AND VENUE**

4      6.    This Court has jurisdiction over the subject matter of this action under

5  29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6      7.    This Court also has supplemental jurisdiction over the state law claims raised

7  herein pursuant to 28 U.S.C. § 1367 because such claims do not raise novel or complex

8  issues of state law and because those claims derive from a common nucleus of operative

9  facts from which the FLSA claims stated herein derive.

10     8.    Venue is proper in the District of Arizona because a substantial portion of

11 the events forming the basis of this suit occurred in this District, and Defendants operate

12 an adult entertainment club that is located in this District.

13 **III.    PARTIES AND PERSONAL JURISDICTION**

14     9.    Plaintiff Williams is an individual residing in the State of Georgia.  Her

15 consent to this action is attached hereto as Exhibit "A."

16     10.    The FLSA Class Members and Arizona Class Members are all current and

17 former exotic dancers who worked in Arizona at "Venom" located at 1104 S. Craycroft,

18 Tucson, AZ 85711 at any time starting three (3) years before this Complaint was filed, up

19 to the present.

20     11.    Defendant Whitefeather Holdings, LLC is a foreign (Delaware) for-profit

21 company doing business in Tucson, Arizona.  Upon information and belief, the principal

22 place of business of Defendant Whitefeather Holdings, LLC is 5725 N. Scottsdale Rd,

23 #140, Scottsdale, Arizona 85250. Whitefeather Holdings, LLC is one of the owners of

24 "Venom" in Tucson, Arizona. Whitefeather Holdings, LLC is present in, and either

25 directly or through agents, does substantial business in the State of Arizona. Whitefeather

26 Holdings LLC is an "employer" or "joint employer" of the Plaintiff and those similarly

27 situated within the meaning of the Fair Labor Standards Act. Defendant Whitefeather

28 Holdings, LLC, may be served with process by serving its registered agent, owner, and

president, Corey Owens, at 4757 E. Greenway Road #107B, Phoenix, AZ 85032, or by accomplishing service at its registered office at 5725 N. Scottsdale Road, #140, Scottsdale, Arizona 85250. Whitefeather Holdings, LLC may also be served by serving its registered agent in Delaware, VCORP Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington, DE 19805, or by serving it at its principal place of business, 2711 Centerville Road, #400, Wilmington, DE 19808.

12.     Defendant Whitefeather Ventures, LLC is a foreign (Delaware) for-profit company doing business in Tucson, Arizona.  The address of Defendant Whitefeather Ventures, LLC in Arizona is listed with the Arizona Secretary of State as being "Corey Owens: 4757 East Greenway Road, #107B, Phoenix, Arizona 85032"; the principal office address of Whitefeather Ventures, LLC is listed as 2711 Centerville Road, #400, Wilmington, DE 19808. Whitefeather Ventures, LLC is one of the owners and operators of "Venom" in Tucson, Arizona. Whitefeather Ventures, LLC is present in, and either directly or through agents, does substantial business in the State of Arizona. Whitefeather Ventures, LLC is an "employer" or "joint employer" within the meaning of the Fair Labor Standards Act, and employed Plaintiff and those similarly situated. Defendant Whitefeather Ventures, LLC, may be served with process by serving its registered agent, owner, and president, Corey Owens, at 4757 E. Greenway Road #107B, Phoenix, AZ 85032, and may also be served art 5725 N. Scottsdale Road, #140, Scottsdale, Arizona 85250. Whitefeather Ventures, LLC may also be served by serving its registered agent in Delaware, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE, 19808, or may be served by serving its registered agent, Corey Owens, wherever he may be found (including at the addresses listed below).

13.     Defendant Corey Owens is an individual who resides in Pima County, Arizona. He is the owner, controlling shareholder, and exerts day to day management over Whitefeather Ventures, LLC and Whitefeather Holdings, LLC, through which he exerts operational and management control over the "Venom" club in Tucson, Arizona. Corey Owens, individually, also exerts day to day management and operational control over

"Venom" in Tucson, Arizona, and is frequently present at, and owns, directs, controls and manages the operations at "Venom" in Tucson, Arizona. Defendant Owens is an "employer" or "joint employer" of the Plaintiff and those similarly situated within the meaning of the Fair Labor Standards Act and Arizona Wage Act. Defendant Owens is the registered agent of Whitefeather Ventures, LLC, and Whitefeather Holdings, LLC in Arizona. Upon information and belief, Defendant Owens may be served with process individually at the same address where he will be served as the agent of Defendant Whitefeather Ventures, LLC located at 4757 E. Greenway Road #107V, Phoenix, AZ 85032, or at his primary residence of 2193 N. Split Rock Place, Tucson, Arizona, 85749. He may also be served at his residence located at 3122 Lincoln Street, Carlsbad, California, 92008, or his residence at 200 Rector Place, Apartment 42D, New York, New York 10280.

## IV.   <u>COVERAGE</u>

14.   At all material times, Defendants have been employers or "joint employers" within the meaning of 3(d) of the FLSA.  29 U.S.C. § 203(d).

15.   At all material times, Defendants have been employers and joint employers within the meaning of A.R.S. § 23-350(3) and A.R.S. §23-362(B).

16.   At all material times, Defendants have operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA.  29 U.S.C. § 203(r)(1).  That is, Defendants perform related activities through unified operation and common control for a common business purpose.  *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs. Inc.*, 346 F.3d 908, 914-15 (9th Cir. 2003).

17.   At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(r)(1) of the FLSA because they have had employees engaged in commerce and sell liquor at their club which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

18.   Furthermore, Defendants have had, and continue to have, an annual gross business volume in excess of the statutory standard.

19.     At all material times during the three years prior to the filing of this action, Defendants categorized all dancers/entertainers employed at "Venom" as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiff, and those similarly situated, was/were individual employee(s) who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

20.     At all material times, Plaintiff, the FLSA collective, and the Arizona Class Members were employees of Defendants within the meaning of A.R.S. § 23-350(2) and A.R.S. § 23-362(A); Defendants exercised a great degree of operational control and management over "Venom," particularly in terms of the conditions of employment applicable to dancers/entertainers; Plaintiff was subject to corporate-wide, uniform rules, guidelines, and policies which were established by Defendants and their agents and which governed the entertainers conduct at all times relevant to this complaint.

21.     Defendant Corey Owens is an owner, manager, and president of Defendants Whitefeather Holdings, LLC and Whitefeather Ventures, LLC.

22.     As the owner, operator, and manager of Defendants Whitefeather Ventures, LLC and Whitefeather Holdings, LLC, Corey Owens employed the Plaintiff, FLSA Class Members, and Arizona Class Members as employees who danced for and entertained customers.

23.     Defendant Corey Owens controlled the nature, pay structure, and employment relationship of Plaintiff, FLSA Class Members, and Arizona Class Members.

24.     Further, Defendant Owens had, at all times relevant to this lawsuit, the authority to hire and fire employees at "Venom", the authority to direct and supervise the work of employees, the authority to sign on the business's checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures.  Additionally, he was responsible for the day-to-day affairs of "Venom." In particular, he was responsible for determining whether "Venom" complied with the Fair Labor Standards Act.

25.     As such, pursuant to 29 U.S.C. § 203(d), A.R.S. § 23-350(3), and A.R.S. § 23-362(B), Defendant Corey Owens acted directly or indirectly in the interest of Plaintiff's, FLSA Class Members' and Arizona Class Members' employment as their employer, which makes him individually liable under the FLSA and Arizona law.

## V.     FACTUAL ALLEGATIONS

26.     Defendants operate an adult entertainment club in Tucson, Arizona under the name of "Venom."

27.     Defendants employ exotic dancers at its aforementioned location.

28.     Plaintiff Williams was previously employed as an exotic dancer at Defendants' adult entertainment club "Venom" where she worked from 2015 until 2018.

29.     Plaintiff worked on a regular basis for Defendants' establishment located in Tucson, Arizona known as "Venom" often working "doubles" (i.e. day shift and night shift on the same day).

30.     Plaintiff and those similarly situated were compensated exclusively through tips from Defendants' customers.  That is, Defendants did not pay Plaintiff whatsoever for any hours worked at their establishment.

31.     Furthermore, Defendants charged the Plaintiff a "house fee" per shift worked.  Defendants also required Plaintiff to share her tips with other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the bouncers.

32.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour.  Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiff about the tip credit allowance (including the amount to be credited) before the credit was utilized.  That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were.  Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiff to retain all of her tips and instead required that she divide her tips amongst other

1   employees who do not customarily and regularly receive tips.   Because Defendants
2   violated the tip-pool law, Defendants lose the right to take a credit toward minimum wage.

3   33.   Furthermore, Defendants are in violation of Arizona's tipped-employee
4   compensation provision, A.R.S. § 23-363(C), which provides that "the employer may pay
5   a wage up to $3.00 per hour less than the minimum wage if the employer can establish . .
6   . that for each week, when adding tips received to wages paid, the employee received not
7   less than the minimum wage for all hours worked."   Defendants failed to compensate
8   Plaintiff with wages for any hours worked in violation of the Arizona Minimum Wage Act.

9   34.   Plaintiff, and those similarly situated, are not exempt from the overtime and
10  the minimum wage requirements under the FLSA or Arizona Minimum Wage Act.

11  35.   Defendants illegally classified the dancers as independent contractors.
12  However, at all times, Plaintiff, FLSA Class Members, and Arizona Class Members were
13  employees of Defendants.

14  36.   Defendants hired/fired, issued pay, supervised, directed, disciplined,
15  auditioned and performed all other duties generally associated with that of an employer
16  with regard to the dancers.

17  37.   In addition, Defendants instructed the dancers about when, where, and how
18  they were to perform their work.

19  38.   Defendants exercised significant control over the misclassified Plaintiff, the
20  FLSA class members, and the Arizona Class Members through written and unwritten
21  policies and procedures. The following demonstrates the dancers' status as employees:

22          a.   Defendants have the sole right to hire and fire the dancers;
23          b.   Defendants required dancers to complete an employee application as
24               a prerequisite to their employment at "Venom";
25          c.   Defendants made the decision not to pay overtime;
26          d.   Defendants provide the dancers with music equipment and a
27               performing stage;
28

e.    Defendants supervise the dancers, and required Plaintiff and those similarly situated to dance on stage according to a stage rotation established by the Defendants or their agents, including the Disc Jockey ("DJ"), and dancers, including Plaintiff and all those similarly situated, were required to dance when their name was called, and dancers were not allowed to choose which songs were played;

f.    Dancers at "Venom" have made no financial investment with or in Defendants' business; Defendants financed all advertising and marketing efforts undertaken on behalf of "Venom" and made all capital investments in the facilities, maintenance, sound system, lights, food, beverage, and inventory, and made all hiring decisions regarding waitstaff, security, entertainers, managerial, and other employees at "Venom";

g.    Defendants would call dancers into work if they were not there, and required dancers to show up for work on "slow days" in order to get shifts on weekends or to dance at all—a failure to come to work when "called in" or to come to work on "slow days" would result in termination or suspension; thus, Defendants have sole control over dancers' opportunity for profit;

h.    Defendants suspended dancers for violations of their rules of conduct, including issuing fines and/or suspensions to dancers who did not "tip out" to the satisfaction of management, suspending dancers who did not come to work on "slow days" or when "called-in," or who otherwise did not follow the Club's rules;

i.    Defendants set the prices for house fees, dances, and tip outs; the price for a personal dance was the same regardless of which entertainer performed the dance, and Plaintiff, and those similarly situated, were not allowed to charge a different price than the price established by

Defendants; the price ($20.00 per song) for private room ("VIP") dances was also set by the Defendants and was the same regardless of which dancer was spending time in VIP with a customer;

j.      In addition to house fees, pursuant to the directions of the Defendants and/or their agents, Plaintiff and all other dancers/entertainers at "Venom" were also required to pay "tip outs" each shift she worked;

k.      The dancers were hired as permanent employees, and many have worked for Defendants for years; and

l.      Little or no skill was required for the work Plaintiff, and those other class members similarly situated, were required to perform.

39.    Defendants misclassified Plaintiff, FLSA Class Members, and Arizona Class Members as independent contractors to avoid Defendants' obligation to pay them pursuant to the Fair Labor Standards Act, and Plaintiff and all other dancers/entertainers were dependent upon customers tips, making their opportunity for profit or loss a function of how much money customers have and are willing to spend and how much Defendants required Plaintiff to pay in order to work.

40.    At all times pertinent to this action, Defendants regulated entertainers' attire and interactions with customers.

41.    If entertainers do not respond to being "called in," fail to appear for a shift, or are deemed to have violated any of the Club's rules, they are charged additional fees or fines, or suspended.

42.    Named Plaintiff and those she seeks to represent have been subject to a variety of these fees, fines and suspensions during the last three years.

43.    Defendants' primary business purpose is to make money; they do so by attracting customers who wish to see women nude or in various stages of undress. The services performed by dancers/entertainers are integral to the success of the Defendants and "Venom."

44.     Pursuant to the directions of the Defendants and/or their agents, entertainers at "Venom" were not allowed to hire subcontractors to perform their duties for them. The right to dance as an entertainer at Defendants' club was a personal right, and only people hired by Defendants' managerial staff were allowed to perform at Defendants' club.

45.     Named Plaintiff and persons similarly situated worked over forty hours in some weeks each worked for Defendants.

46.     Defendants have never paid Plaintiff and all others similarly situated any amount as wages whatsoever and have instead unlawfully required Plaintiff and all others similarly situated to pay them for the privilege of working.

47.     The only source of monies received by Plaintiff (and the class she seeks to represent) relative to her employment with Defendants came in the form of gratuities received directly from customers, a portion of which she/they were required to pay to Defendants.

48.     Although Plaintiff and FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek.  In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violate the minimum wage requirement of FLSA.  *See* 29 U.S.C. § 206.

49.     Defendants' method of paying Plaintiff in violation of the FLSA, was willful, and was not based on a good faith and reasonable belief that their conduct complied with the FLSA. The FLSA "economic realities" test has existed for decades, as have FLSA requirements for paying minimum wage and overtime. Defendants' failure to comply with the FLSA in intentionally misclassifying Plaintiff, and those similarly situated, as "independent contractors" and in also taking tips earned by Plaintiff and those similarly situated was, and is, willful and intentional wage theft in violation of the FLSA. Defendants misclassified Plaintiff with the sole intent to avoid paying her in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA and Plaintiff is entitled to restitution of such

fines and fees. Defendants knew, or showed reckless disregarding for the fact that they misclassified dancers as independent contractors, and intentionally failed to pay dancers the minimum wage and overtime wage at the required rate under the FLSA and Arizona law, and unlawfully deducted tip-outs and "house fees" from the pay of Plaintiff and those she seeks to represent.

50.   Defendants' method of paying Plaintiff and the Arizona Class Members was in violation of the Arizona Minimum Wage Act and Arizona Wage Act and was willful and not based on a good faith and reasonable belief that its conduct complied with Arizona Law.

51.   The named Plaintiff and all dancers/entertainers who worked at "Venom" performed precisely the same job duties -dancing and entertaining at "Venom."

52.   The named Plaintiff and all other dancers/entertainers who worked at "Venom" during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

53.   The name Plaintiff and all other dancers/entertainers at "Venom" were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

54.   The named Plaintiff and all other dancers/entertainers at "Venom" during the applicable limitations period(s), were subject to the same across-the-board, uniformly applied corporate policy mandated by Defendants.

55.   The named Plaintiff and all other dancers/entertainers at "Venom" during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

56.   As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainty that numerous other current and former dancers and entertainers who worked at "Venom" during the applicable limitations period would elect to participate in this action if provided notice of same.

57. Upon information and belief, more than 200 dancers and entertainers have worked at "Venom" during the three-five years prior to the filing of this action; the Plaintiff, and those she seeks to represent, was/were not covered by any minimum or overtime wage exemption contained in the FLSA.

58. Named Plaintiff is "similarly situated" to the § 216(b) class of persons she seeks to represent, and will adequately represent the interests of the class.

59. Named Plaintiff has hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

60. Defendants failed to keep adequate records of Plaintiff's and FLSA Class Members' work hours and pay in violation of section 211(c) of the Fair Labor Standards Act. *See* 29 U.S.C. § 211(c).

61. Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a. The time of day and day of week on which the employees' work week begins;

b. The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c. An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d. The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e. The hours worked each workday and total hours worked each workweek;

f. The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.      The dates, amounts, and nature of the items which make up the total additions and deductions;

j.      The total wages paid each pay period; and

k.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

62.      Defendants have not complied with federal law and have failed to maintain such records with respect to the Plaintiff and FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiff and FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiff seeks to put Defendants on notice that she intends to rely on *Mt. Clemens Pottery Co.* to provide the extent of her unpaid work.

## VI.     <u>COLLECTIVE ACTION ALLEGATIONS</u>

**A.    FLSA Class Members**

63.      Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers at any time during the three (3) years prior to the commencement of this action to present.

64.      Plaintiff has actual knowledge that FLSA Class Members have been denied overtime pay for hours worked over forty hours per workweek and have also been denied pay at the federally mandated minimum wage rate. That is, Plaintiff worked with other dancers at "Venom." As such, she has first-hand personal knowledge of the same pay

violations throughout Defendants' club. Furthermore, other exotic dancers at Defendants' club "Venom" have shared with her similar pay violation experiences as those described in this Complaint.

65.     Other employees similarly situated to the Plaintiff work or have worked at "Venom" but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.  Furthermore, these same employees were denied pay at the federally mandated minimum wage rate.

66.     Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty.  Defendants have also denied them full compensation at the federally mandated minimum wage rate.

67.     FLSA Class Members perform or have performed the same or similar work as the Plaintiff.

68.     FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

69.     FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

70.     As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

71.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

72.     The experiences of the Plaintiff, with respect to her pay, are typical of the experiences of the FLSA Class Members.

73.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

74.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

75.    All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

76.    Although the exact number of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula.  The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendant that caused harm to all FLSA Class Members; Plaintiff is similarly situated to the class of persons she seeks to represent and will adequately represent the class; she has hired counsel experienced in labor and employment cases and collective actions under 29 U.S.C. 216(b) who will adequately represent the class.

77.    As such, Plaintiff brings her FLSA overtime and minimum wage claims as a collective action on behalf of the following class:

**The FLSA Class Members are all of Defendants' current and former exotic dancers who worked at the Venom Gentlemen's Club located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

**B.    Arizona Class Action**

78.    Plaintiff and the Arizona Class Members incorporate all preceding paragraphs as though fully set forth herein.

79.    Plaintiff brings her Arizona wage claims as a Rule 23 class action on behalf of the following class:

**The Arizona Class Members are all of Defendants' current and former exotic dancers who worked at the Venom Gentlemen's Club located in Tucson, Arizona at any time starting three years before this Complaint was filed up to the present.**

- 16 -

80.   <u>Numerosity</u>.  The number of members in the Arizona Class is believed to be over fifty (50).  This volume makes bringing the claims of each individual member of the class before this Court impracticable.  Likewise, joining each individual member of the Arizona Class as a plaintiff in this action is impracticable.  Furthermore, the identity of the members of the Arizona Class will be determined from Defendants' records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.   To require individual actions would prejudice the Arizona Class and Defendants.

81.   <u>Typicality</u>.  Plaintiff's claims are typical of the Arizona Class because like the members of the Arizona Class, Plaintiff was subject to Defendants' uniform policies and practices and was compensated in the same manner as others in the Arizona Class. Defendants failed to pay non-exempt employees who worked at Venom Gentlemen's Club overtime wages for all of their overtime hours worked.  All members of the Arizona Class worked substantially more than eight (8) hours in a day and forty (40) hours in a workweek. Plaintiff and the Arizona Class were likewise not paid minimum wage for all of their hours worked.   Plaintiff and the Arizona Class have been uncompensated and/or under-compensated as a result of Defendants' common policies and practices which failed to comply with Arizona law.

82.   <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interest of the Arizona Class because it is in her interest to effectively prosecute the claims herein alleged in order to obtain the unpaid wages and penalties required under Arizona law.  Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation.  Plaintiff does not have any interest which may be contrary to or in conflict with the claims of the Arizona Class she seeks to represent.

83.   <u>Commonality</u>.  Common issues of fact and law predominate over any individual questions in this matter.  The common issues of fact include, but are not limited to:

      a.     Whether Plaintiff and the Arizona Class worked more than forty (40) hours in a workweek;

      b.     Whether Defendants failed to pay Plaintiff and the Arizona Class overtime wages for all hours worked over forty (40) hours in a workweek; and

      c.     Whether Defendants failed to pay Plaintiff and Arizona Class the minimum wage for all hours worked.

84.    The common issues of law include, but are not limited to:

      a.     Whether Defendants improperly classified Plaintiff and the Arizona Class as exempt;

      b.     Whether Plaintiff and the Arizona Class are entitled to compensatory damages;

      c.     The proper measure of damages sustained by Plaintiff and the Arizona Class; and

      d.     Whether Defendants' actions were "willful."

85.    <u>Superiority</u>.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any member of the Arizona Class could afford to pursue individual litigation against companies the size of Defendants, doing so would unduly burden the court system.  Individual litigation would magnify the delay and expense to all parties and flood the court system with duplicative lawsuits. Prosecution of separate actions by individual members of the Arizona Class would create the risk of inconsistent and varying judicial results and establish incompatible standards of conduct for Defendants.

86.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Arizona Class Members are promoted.  Additionally, class treatment in this matter will provide for

judicial consistency.  The identity of members of the Arizona Class is readily identifiable from Defendants' records.

87.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees and meal periods taken.

88.    Ultimately, a class action is a superior forum to resolve the Arizona claims detailed herein because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Arizona Class according to applicable Arizona laws.

89.    <u>Nature of notice to be proposed</u>.  As to the Rule 23 Class, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Arizona class by mail, electronic mail, print, broadcast, internet and/or multimedia publication.

## VII.   <u>CAUSES OF ACTION</u>

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### FAILURE TO PAY OVERTIME
### (COLLECTIVE ACTION)

90.    Plaintiff incorporates all allegations contained in the foregoing paragraphs.

91.    Defendants are or were the "employer" or joint-employers and employ(ed) Plaintiff and those similarly situated, and Plaintiff and those similarly situated were the "employees" of those "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

92.    Defendants are engaged in "commerce" and/or the production of "goods" for "commerce."

1       93.    Defendants are an enterprise engaged in commerce within the meaning of

2   the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and

3   because their annual gross volume of sales made is more than $500,000.

4       94.    Plaintiff consented to sue in this action pursuant to 29 U.S.C. § 216(b).

5   Written Consent to sue executed by Plaintiff are submitted herewith.

6       95.    Defendants misclassified Plaintiff and all other similarly situated as

7   independent contractors.

8       96.    Defendants failed to pay Plaintiff and all other similarly situated wages at a

9   rate of one and one-half (1 ½) times her regular rate, for hours worked in excess of forty

10  (4) hours per week, in violation of 29 U.S.C. § 207.

11      97.    Defendants knowingly, intentionally and willfully violated the FLSA; as set

12  for the above, the FLSA requirements of paying minimum wage and overtime are decades

13  old and no reasonable business owner would believe that charging people to work and

14  taking tip money at the end of a shift is complaint with Federal or Arizona law.

15      98.    Defendants' mischaracterization of Plaintiff as an "independent contractor",

16  with the consequence of having failed to pay them premium overtime compensation for

17  hours worked in excess of 40 hours per work week, constitutes a willful violation of the

18  FLSA, and Defendants did not rely on any determinations or rulings of the U.S.

19  Department of Labor in utilizing same.

20      99.    Due to Defendants' FLSA violations, Plaintiff and all others similarly

21  situated are entitled to recover from Defendants, as well as reasonable attorneys' fees and

22  costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to

23  be determined at trial.

24      100.    Defendants' practice of failing to pay Plaintiff and FLSA Class Members

25  time-and-a-half rate for hours in excess of forty (40) per workweek violates the FLSA.

26  29 U.S.C. § 207.  In fact, Defendants do not compensate them whatsoever for any hours

27  worked.

28

101.   In at least one-week Plaintiff and the FLSA Class Members that she seeks to represent worked more than 40 hours per week, but were not compensated at all by Defendants.

102.   None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Defendants or the Plaintiff.

**COUNT II**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**FAILURE TO PAY THE MINIMUM WAGE**
**(COLLECTIVE ACTION)**

103.   Plaintiff incorporates all allegations contained in the foregoing paragraphs.

104.   Defendants are or were the "employers" or "joint employers" of the Plaintiff and all others similarly situated within the meaning of the FLSA, 29 U.S.C. § 203(d).

105.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce."

106.   Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because they have employees engaged in commerce, and because its annual gross volume of sales made is more than $500,000.

107.   Plaintiff has consented to sue in this action pursuant to 29 U.S.C. § 216(b). A consent to sue executed by Plaintiff is submitted herein.

108.   Defendants misclassified Plaintiff and all other similarly situated persons as independent contractors.

109.   Defendants failed to pay Plaintiff and all others similarly situated the minimum wage in violation of 29 U.S.C. § 206.

110.   Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiff and all others similarly situated the minimum wage under the FLSA.

111.   Defendants' actions complained of herein were not done in good faith reliance on any ruling or determination made by the U.S. Department of Labor.

112.   Due to Defendants' FLSA violations, Plaintiff and all others similarly situated are entitled to recover from Defendants, minimum wage compensation of $7.25 per hour, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b), all in an amount to be determined at trial.

113.   Defendants' practice of failing to pay Plaintiff and FLSA Class Members at the required minimum wage rate violates the FLSA.  29 U.S.C. § 206.  In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tip credit provision under the FLSA as described above.

114.   None of the exemptions provided by the FLSA regulating the duty of employers to pay employees for all hours worked at the required minimum wage rate are applicable to the Defendants or the Plaintiff.

### COUNT III
### UNLAWFUL TAKING OF TIPS IN VIOLATION OF 29 U.S.C. 203
### (COLLECTIVE ACTION)

115.   Plaintiff incorporates all allegations contained in the foregoing paragraphs.

116.   Plaintiff customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

117.   At all relevant times, Defendants are or were the "employer" or joint-employers and employ(ed) Plaintiff and those similarly situated, and Plaintiff and those similarly situated were the "employees" of those "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d).

118.   Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA. Defendants operate an enterprise engaged in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it

has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

119.   Tips belong to the employee: Plaintiff is entitled to recover payments made by Plaintiff to the Club and its employees and workers as part of her minimum wage and overtime wage losses because such payments reduced her wages below the minimum and overtime wage. These types of illegal "kick-backs" that the dancers paid from their tips in order to work are recoverable as part of Plaintiff's wage loss under 29 C.F.R. § 531.35.

> Unlawful "kick-backs" must be returned to Plaintiffs to bring their lost wages up to zero, and not leave them at a negative number. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995). "The FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise." *Id*. To fully compensate a minimum wage employee where the employer has improperly required him to pay kickbacks, the Defendant employer must pay the full minimum wage for all time worked, in addition to all fees collected. *Reich v. Priba Corp.*, 890 F.Supp. 586, 595 (N.D. Tex. 1995); *Reich v. Circle C Investments, Inc*., 998 F.2d 324, 330 (5th Cir. 1993); *Richard Martin,* No. 13-CV-4242-RWS, at *9 (N.D.Ga. Nov. 20, 2015).

Under the FLSA, wages must be paid "finally and unconditionally" or "free and clear" of any direct or indirect "kickbacks." 29 C.F.R. § 531.35 states:

> [w]hether in cash or in facilities, 'wages' cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or 'free and clear.' The wage requirements of the Act will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the 'kick back' is made in cash or in any way other than cash . . . . [T]here would be a violation of the Act in any work week when the cost . . . by the employee cuts into the minimum or overtime wage required to be paid . . . under the Act.

Wages under the FLSA must be received "free and clear" of any improper deduction. *Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228, 1241 (11th Cir. 2002).

1   "[R]equiring employees to pay for expenses incurred for the benefit of the employer
2   functions as a *de facto* wage deduction." *De Leon-Granados v. Eller & Sons Trees, Inc.*,
3   581 F. Supp. 2d 1295, 1315 (N.D.Ga. 2008). In fact, there is "no difference between
4   deducting an expense and failing to reimburse an expense." *Id*.

5       The mandatory payment of house fees and "tip-out" fees required to be paid by
6   entertainers are the exact type of unlawful "kickbacks" prohibited by the FLSA. These
7   payments are recoverable as part of a FLSA wage claim to the extent they reduce the
8   employee's wage below the minimum or overtime rate. *Reich v. Priba Corp.*, 890 F.
9   Supp. 586, 595 (N.D.Tex. 1995); *Reich v. Circle C Investments, Inc.*, 998 F.2d 324, 330
10  (5th Cir. 1993); *Hart v. Rick's Cabaret International, Inc.*, 60 F.Supp.3d 447, 477
11  (S.D.N.Y. 2014). The clubs "practice of collecting a tip out fee . . . violates the FLSA
12  because the deduction further reduces the entertainers' wages below the minimum
13  wage." *Reich*, 890 F. Supp. at 595. "[T]o fully compensate the entertainers in the
14  amounts required by the FLSA, [the club] must pay them the full minimum wage for all
15  time worked during the limitations period. In addition, the club must return all tip out
16  fees collected from the entertainers.". *Id*. "[T]he Court agrees with Plaintiffs that 'the
17  method of calculating Defendants' back wage liability at trial should be (1) $7.25 per
18  hour worked, plus (2) all [house fees] paid by Plaintiffs to Defendants. . . ." *Roger Wilson*
19  *v. 1400 Northside Drive, Inc.*, Civil Action No. 1:15-CV-4453-SCJ, * 21 (June 15, 2017
20  N.D.Ga.).

21      120.   Plaintiff's (and those similarly situated) post March 2018 employment is
22  covered by the Tip Income Protection Act of 2018 ("TIPA"). Under TIPA:

23          [a]n employer may not keep tips received by its employees for any
24          purpose including allowing managers or supervisors to keep any portion
            of employees' tips, regardless of whether or not it takes a tip credit.
25

26  29 U.S.C. § 203.

27      121.   Defendants kept a portion of tips paid to Plaintiff by Defendants' customers
28  in the form of fees, fines, mandatory charges and other payments to management, house

moms, DJ and floor men in violation of TIPA.

122.   Defendants required Plaintiff to participate in an illegal tip pool, which included employees who do not customarily and regularly receive tips, and do not have more than a *de minimis*, if any, interaction with customer leaving the tips (such as the Club DJ, security, and management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped employees under the Fair Labor Standards Act (FLSA)."

123.   The contribution the Defendants required Plaintiff to make after each shift was arbitrary and capricious and distribution was not agreed to by Plaintiff and other dancers; but rather, was imposed upon Plaintiff and other dancers.

124.   By requiring Plaintiff to pool her tips with club management, including the individual Defendants named herein, Defendants "retained" a portion of the tips received by Plaintiff in violation of the FLSA.

125.   Defendants did not make any effort, let alone a "good faith" effort, to comply with the FLSA as it relates to compensation owed to Plaintiff.

126.   At the time of their illegal conduct, Defendants knew or showed reckless disregard that the tip-pool which they required Plaintiff to contribute included non-tipped employees and, therefore, was statutorily illegal. In spite of this, Defendants willfully failed and refused to pay Plaintiff the proper amount of the tips to which she was entitled.

127.   Defendants' willful failure and refusal to pay Plaintiff the tips she earned violates the FLSA.

128.   Defendants kept a portion of tips paid to Plaintiff by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, DJs, and door men in violation of TIPA.

129.   As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiff is entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

130.   As a result of Defendants' willful violation of TIPA, Plaintiff and the FLSA

Class Members are entitled to recover, under the FLSA and TIPA, all tips kept by the employer, any tip credit claimed by Defendants, an equal amount in liquidated damages and attorneys' fees.

**COUNT IV**
**VIOLATION OF THE ARIZONA MINIMUM WAGE ACT**
**FAILURE TO PAY MINIMUM WAGE**
**(CLASS ACTION)**

131.   Plaintiff and Arizona Class Members incorporate all allegations contained in the foregoing paragraphs.

132.   At all relevant times, Plaintiff and Arizona Class Members were employees under the Arizona Minimum Wage Act, A.R.S. § 23-363 et seq.

133.   At all relevant times, Defendants were Plaintiff's and Arizona Class Members' employer under the Arizona Minimum Wage Act, A.R.S. § 23-363 et seq.

134.   Defendants practice of willfully failing to pay Plaintiff and Arizona Class Members the applicable minimum wages for all hours worked, as required by the Arizona Minimum Wage Act. A.R.S. § 23-363 et seq. and implementing regulations. In fact, Defendants do not compensate them whatsoever for any hours worked and have violated the tipped-employee compensation provision under Arizona law as described above.

**COUNT V**
**VIOLATION OF THE ARIZONA WAGE ACT**
**FAILURE TO PAY WAGES DUE**
**(CLASS ACTION)**

135.   Plaintiff and Arizona Class Members incorporate all allegations contained in the foregoing paragraphs.

136.   Defendants' practice of willfully failing to pay Plaintiff and Arizona Class Members wages for labor performed violates the Arizona Wage Act. A.R.S. § 23-351(C). In fact, Defendants do not compensate them whatsoever for any hours worked.

## VIII.  DAMAGES SOUGHT

137.    Plaintiff, FLSA Class Members, and Arizona Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated minimum wage rate.

138.    Additionally, Plaintiff, FLSA Class Members, and Arizona Class Members are entitled to recover their unpaid overtime compensation.

139.    Plaintiff, FLSA Class Members, and Arizona Class Members are also entitled to all of the misappropriated funds.

140.    Plaintiff and FLSA Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages.  29 U.S.C. § 216(b).

141.    Plaintiff and FLSA Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA.  29 U.S.C. § 216(b).

142.    Plaintiff and Arizona Class Members are entitled to an amount equal to wages owed, interest thereon, and an additional amount equal to twice the underpaid wages.  A.R.S. § 23-364(G).

143.    Plaintiff and Arizona Class Members are entitled to treble the amount of wages unpaid under the Arizona Wage Act. A.R.S. § 23-355(A).

144.    The treble damages provision set forth in A.R.S. § 23-355(A) may be applied to treble a liquidated damages award received under the FLSA pursuant to this Court's supplemental jurisdiction. *Davis v. Jobs for Progress*, 427 F. Supp. 479, 483 (D. Ariz. 1976).

145.    Plaintiff and Arizona Class Members are entitled to recover attorneys' fees and costs under A.R.S. §§ 12-341, 12-341.01, 23-364(G).

## IX.    JURY DEMAND

146.    Pursuant to their rights under the Constitution of the United States, U.S. Const. amend VII, and Fed. R. Civ. P. 38(a), Plaintiff hereby demands a trial by a jury of twelve.

1

2

**PRAYER FOR RELIEF**

3

147.   For these reasons, Plaintiff, FLSA Class Members, and Arizona Class

4

Members respectfully request that judgment be entered in their favor awarding the

5

following relief:

6

     a.    Overtime compensation for all hours worked over forty in a

7

          workweek at the applicable time-and-a-half rate;

8

     b.    An award to Plaintiff and all others similarly situated of all unpaid

9

          wages at the FLSA mandated minimum wage rate for all hours

10

          worked by the Plaintiff and others similarly situated during the three

11

          years preceding their having "opted-in" until the date of judgment,

12

          as well as restitution of all fees, fines, and charges paid to the

13

          Defendants by Plaintiff, liquidated damages, interest and attorneys'

14

          fees as provided under the FLSA;

15

     c.    An award of all misappropriated funds, including all tips kept by the

16

          employer, the amount of any tip-credit claimed by the employer, the

17

          amount of any tip-credit claimed by Defendants, an equal amount in

18

          liquidated damages and reasonable attorney's fees under the FLSA;

19

     d.    An award of an equal amount of all owed wages as liquidated

20

          damages as allowed under the FLSA;

21

     e.    An amount equal to wages owed, interest thereon, and an additional

22

          amount equal to twice the underpaid wages pursuant to A.R.S. § 23-

23

          364(G);

24

     f.    An amount equal to treble the amount of wages unpaid under Arizona

25

          Wage Law and liquidated damages pursuant to A.R.S. § 23-355(A);

26

     g.    Prejudgment and post-judgment interest on unpaid back wages

27

          pursuant to the FLSA and/or A.R.S. § 23-364(G);

28

h.  Reasonable attorneys' fees, costs and expenses of this action as provided by the FLSA and A.R.S. §§ 12-341, 12-341.01, 23-364(G);

i.  In the event Defendants fail to satisfy any judgment for Plaintiff with respect to the Arizona wage claims, an award that Defendants shall pay Plaintiff an amount which is treble the amount of the outstanding judgment with interest thereon at the then legal rate in accordance with A.R.S. § 23-360;

j.  that Plaintiff's FLSA claims be certified and proceed as a collective action, pursuant to 29 U.S.C. 216(b), and as to the Arizona state law claims, be certified as a class action under Fed. R. Civ. P. 23

k.  that the Court direct that appropriate notice of Plaintiff's FLSA action be sent to all person employed as dancers at Defendants' club "Venom" during the three years preceding the filing of this action;

l.  As to counts III and IV, that the Court direct that appropriate notice of proposed class claims under the Arizona Minimum Wage Act be sent to all persons employed as dancers at "Venom" during the three (3) years prior to the filing of this action; and

m.  Such other and further relief to which Plaintiff and Class Members may be entitled, at law or in equity.

DATED this 2nd day of October 2019.

**RANDALL LAW PLLC**

/s/ Samuel R. Randall
Samuel R. Randall
Arizona Bar No. 024517
4742 N 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 328-0262
srandall@randallslaw.com

- 29 -

1

2 **FLYNN LAW FIRM, LLC**

3

4 /s/ Jonah Flynn
Jonah A. Flynn
5 Georgia Bar No. 266555
*Counsel for Plaintiff*
6 4200 Northside Parkway NE
Building One, Suite 200
7 Atlanta, GA 30327
Phone: 404-835-9660
8 Fax: 404-835-6005
e-mail: jflynn@flynnfirm.com
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28